# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CHRIS D. BAKER,                          )
                                         )
                **Plaintiff,**       )
                                         )
vs.                                      )          Case No. 11-cv-566-CVE-TLW
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                **Defendant.**       )

## REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Chris D. Baker seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **AFFIRMED**.

## INTRODUCTION

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical

impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if

supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a fifty-three year old male, applied for Title II and Title XVI benefits on October 8, 2008, alleging a disability onset date of September 29, 2008. (R. 121-23, 124-29). Plaintiff alleged that he was unable to work due to constant pain caused by left leg and back problems. (R. 66-69, 70-73, 142-49). Plaintiff's claims for benefits were denied initially on April 8, 2009, and on reconsideration on July 16, 2009. (R. 46-50, 66-73, 79-84). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. 85). The ALJ held a hearing on April 28, 2010. (R. 8-45). The ALJ issued a decision on July 28, 2010, denying benefits and finding plaintiff not disabled. (R. 51-65). After receiving additional medical records from plaintiff, the Appeals Council declined plaintiff's request to review the case; therefore, the ALJ's decision serves as the final decision of the Commissioner. (R. 1-5).

Plaintiff timely appealed the Commissioner's decision. (Dkt. # 2). On appeal, plaintiff alleges four points of error: (1) that the ALJ failed to consider all of plaintiff's impairments at steps two and three; (2) that the ALJ erred in finding that plaintiff could perform his past relevant work; (3) that the ALJ failed to conduct a proper credibility analysis; and (4) that remand is required because plaintiff received a subsequent award of benefits under Title XVI.

### The ALJ's Decision

The ALJ found that plaintiff had severe impairments of "degenerative disc disease of the thoracic and lumbar spine and degenerative joint disease of the left knee." (R. 56). The ALJ rejected plaintiff's claims that he also had severe impairments of depression and problems with his hands, stating that these impairments were medically non-determinable because the record

contained no test or medication logs to support plaintiff's testimony.[1] (R. 56-57). The ALJ also denied plaintiff's request for consultative examinations to provide further information regarding plaintiff's claims of depression and hand problems. (R. 57). The ALJ noted that plaintiff had received regular treatment throughout the relevant time period and had never mentioned either condition to his treating physician; therefore, a consultative examination was not required. Id. The ALJ concluded that, based on plaintiff's severe impairments, plaintiff did not meet or medically equal a listing, giving special consideration to the listing for joint dysfunction (Listing 1.02) and disorders of the spine (Listing 1.04). Id.

The ALJ then assessed plaintiff's residual functional capacity. The ALJ summarized plaintiff's testimony as follows: Plaintiff testified that he last worked in September 2008 and that he left his last job due to "marital problems and missing work one to two times a week." (R. 58). Plaintiff testified that he suffered constant pain in his lower back and left knee and swelling in his feet, so he had not tried to return to work. Id. Plaintiff stated that his doctor did not recommend surgery. Id. Plaintiff described his functional capacity as limited to standing for five minutes, sitting for twenty minutes, and walking less than one block. Id. Plaintiff testified that he uses a cane two to three times a week. Id. Plaintiff also has hypertension, insomnia, memory problems, and numbness in his hands while sleeping. Id. Additionally plaintiff has problems opening jars and can only lift fifteen to twenty pounds. Id. Plaintiff also testified to pain with kneeling and stooping. Id. Plaintiff's June 2009 function report listed additional limitations. Id. Plaintiff cited occasional problems handling his personal care and difficulty "with lifting, squatting, bending, standing, reaching, walking, sitting and kneeling." Id. Plaintiff reported using a cane and walker at all times since October 2008. Id.

---

[1] Plaintiff also raised, for the first time at the hearing, the possibility that he suffered from hypertension, but the ALJ does not address this issue in her decision. (R. 29-30; Dkt. # 15 at 2-3).

The ALJ then summarized the medical evidence. Plaintiff received treatment through the Indian Health Care Resource Center ("Indian Center") between November 2008 and March 2010 "for various complaints including hypertension, back pain, insomnia, and problems with the left leg for which the claimant has received medication management." (R. 58). X-rays from November 2008 showed "no acute disease" in the lumbar spine. Id. X-rays of plaintiff's hips in February 2010 also indicated "no acute pathology." Id.

Plaintiff received a consultative examination from Dr. Joel Hopper in February 2009. (R. 59). Dr. Hopper found that plaintiff's examination was normal except for a "mild reduction in range of motion of the left knee." Id. Although plaintiff told Dr. Hopper that his November 2008 x-rays "showed a lack of 'dividers' in his lower back" and that "the discs in his back were 'completely gone,'" Dr. Hopper found that plaintiff's "'vertebral body heights and intervertebral disc spaces are well-maintained.'" Id. Dr. Hopper assessed plaintiff as having hypertension, a history of insomnia, left knee pain, and chronic lower back pain. Id.

Plaintiff received an x-ray of his left knee in March 2009, which showed no abnormalities. Id. Following a motor vehicle accident in April 2009, plaintiff received CT scans of his brain and spine. Id. Both scans were normal. Id. By February 2010, however, plaintiff had developed "mild degenerative disc disease of the lumbar spine and a mild disc bulge and face arthropathy of the thoracic spine." (R. 58-59).

The ALJ concluded that plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual and the treatment the claimant has received has been essentially routine and/or conservative in nature." (R. 59). The ALJ adopted the agency's physical residual functional capacity assessment that plaintiff could perform the full range of medium work because "it is supported by the objective medical signs and findings

throughout the record." (R. 59). The ALJ recognized that although plaintiff would likely have some difficulty due to his recent onset of degenerative disc disease and a bulging disc, these conditions did not impact plaintiff's ability to perform medium work, particularly in light of the fact that plaintiff's treating physician placed no restrictions on plaintiff's activities. (R. 60).

Because the ALJ found that plaintiff could perform the full range of medium work, the ALJ also concluded that plaintiff could return to his past relevant work as a sandblaster, forklift operator, material handler, construction worker, production worker, janitor, or spray painter. (R. 61). The ALJ stated that these jobs were generally performed at the medium level of exertion. Id. Accordingly, the ALJ found plaintiff not disabled. Id.

**Plaintiff's Medical Records**

With the exception of an emergency room visit following a motor vehicle accident in April 2009, plaintiff received treatment exclusively from the Indian Center during the relevant time period. Plaintiff first visited the Indian Center on November 3, 2008, complaining of lower back pain that had lasted for approximately two months. (R. 207). Plaintiff also complained of insomnia and stated that his left leg "gives out." Id. The doctor diagnosed plaintiff with "chronic low back pain, left knee weakness, and insomnia." Id. The doctor prescribed Naprosyn,[2] Flexeril,[3] and Ultram[4] for plaintiff's pain. Id. The doctor also ordered x-rays of plaintiff's lumbar spine, which were normal. (R. 208).

---

[2] Naprosyn is a pain medication that comes in prescription and over-the-counter strength. Naprosyn is used to treat multiple types of arthritis (prescription strength) and mild pain (over-the-counter strength). See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000526/ (last visited on October 5, 2012).

[3] Flexeril, also known as cyclobenzaprine, is a muscle relaxant. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699/ (last visited on October 5, 2012).

[4] Ultram, also known as tramadol, "is used to relieve moderate to moderately severe pain." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960/ (last visited on October 5, 2012).

Within days of his first appointment for back pain, plaintiff was receiving emergency dental work at the Indian Center when his dentist found that plaintiff's blood pressure was elevated. (R. 205-06). Plaintiff sought treatment for high blood pressure on November 14, 2008. (R. 205). Plaintiff stated that he had not previously received treatment for high blood pressure and was "feeling ok." Id. His blood pressure at that appointment was recorded at 154/100. Id. The doctor prescribed blood pressure medication[5] and discussed diet and lifestyle changes with plaintiff. Id. Plaintiff's blood pressure was elevated at his appointments in May 2009, July 2009, August 2009, February 2010, and March 2010. (R. 231, 233-36, 247). Plaintiff's doctor continued plaintiff's prescription medication, and the record contains no indication that plaintiff's doctor was displeased with plaintiff's progress. (R. 231, 233-36, 247, 271-75). In fact, plaintiff's blood pressure was normal at his December 2009 appointment, and plaintiff's doctor noted that plaintiff's hypertension was improved during his March 2010 appointment. (R. 234, 247).

Plaintiff also received routine treatment for his insomnia. The doctor prescribed Ambien as a sleep aid for plaintiff at his third appointment in November 2008. (R. 204). Thereafter, plaintiff asked for an increase in dosage in May 2009. (R. 231). The remaining medical records contain no other mention of plaintiff's insomnia. (R. 233-36, 247). The records that plaintiff submitted to the Appeals Council indicated that plaintiff's doctor discontinued Ambien in December 2010. (R. 274).

Plaintiff never complained of feeling "down" or depressed. (R. 203-05, 231, 233-36, 247, 271-75). Plaintiff was screened for depression at each appointment. (R. 203-05, 231, 233-36, 247). Plaintiff's screens were negative except for December 2009 and February 2010. (R. 233-

---

[5] The doctor prescribed Norvasc, also known as amlodipine. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000914/ (last visited on October 5, 2012).

34). Although plaintiff appears to have exhibited some symptoms of depression, the doctor did not address it in his progress notes and did not prescribe any medication for plaintiff. (R. 233-34). The medical records that plaintiff submitted to the Appeals Council also indicate that plaintiff's depression screens were negative from March to December 2010. (R. 271-75).

Plaintiff's major complaint was pain in his lower back and left leg. The Indian Center ordered x-rays of plaintiff's lumbar spine in November 2008. (R. 203-04, 208). All three views were negative, and the radiology report states that "[t]he vertebral body heights and intervertebral disk spaces are well-maintained." (R. 208). Dr. Hopper reviewed the x-rays during his consultative examination of plaintiff in February 2009 and concurred that the x-rays were normal. (R. 209-14). Dr. Hopper opined that plaintiff's lower back pain was likely muscle-related. Id. Dr. Hopper also opined that plaintiff's left knee pain and limited range of motion was "likely secondary to osteoarthritis." Id.

Based on Dr. Hopper's examination, the Commissioner then ordered a knee x-ray for plaintiff in March 2009. (R. 215). The radiology report noted the presence of hardware from plaintiff's previous knee surgery but concluded that plaintiff had "[g]ood alignment of the knee joint without any narrowing of the joint space" and "no degenerative changes to the distal femur or proximal tibia." (R. 216). Plaintiff's patella was "[n]ormal." Id.

Plaintiff had a brain CT and a spinal CT in April 2009 following a motor vehicle accident. (R. 226-30). Plaintiff presented at the emergency room with complaints of a headache and neck pain. Id. Both scans were normal. Id.

Plaintiff's doctor ordered additional scans in February 2010. An X-ray of plaintiff's right hip was unremarkable. (R. 268). Plaintiff's left hip also showed "[n]o acute pathology." (R. 267). CT scans of plaintiff's spine revealed "mild disc bulge resulting in minimal canal and bilateral

foraminal stenosis" at L3-L4. (R. 241). Plaintiff also had a "disk bulge" with "mild facet arthropathy resulting in mild canal and mild foraminal narrowing" at L4-L5. Id. Plaintiff's L5-S1 showed "minimal disk bulge and slight facet arthropathy with no significant stenosis." Id. Plaintiff's lumbar spine showed signs of "mild degenerative disk disease involving multiple levels." (R. 246). The overall impression, however, was "[n]o acute abnormality." Id.

The additional evidence that plaintiff submitted to the Appeals Council is unremarkable. For the period of time between March 2010 and December 2010, plaintiff continued receiving medication for his lower back pain and hypertension. (R. 270-78). Medications and dosage amounts appear consistent with plaintiff's previous treatment. Id.

**The ALJ Hearing**

The ALJ held a hearing on April 28, 2010. (R. 8-45). Plaintiff testified that he stopped working in September 2008 due to "marital problems" and because his back pain required him to miss one or two days per week. (R. 20-22). Plaintiff stated that he was fired for lack of performance. (R. 21). Plaintiff indicated that he attempted to work at another job after September 2008 but had to leave after the first day due to back pain. (R. 22-23).

Plaintiff testified that he has constant back pain because a "disk is pushing over on the other side of it." (R. 25). Plaintiff stated that his doctor did not recommend surgery because the pain was manageable. Id. Plaintiff also stated that he previously had surgery on his left knee and has pain in that area when the weather gets bad. (R. 26). Plaintiff told the ALJ that his left leg sometimes will "just go out on me." (R. 25). Plaintiff's feet also swell when he stands. (R. 26). Plaintiff estimated that he could stand for fifteen minutes and would need to rest ten to twenty minutes before standing again. (R. 27). Plaintiff could only sit for twenty minutes and could only walk a block before feeling pain. Id. Plaintiff stated that he used a cane two or three times per

week and that he avoided stairs and uneven surfaces. (R. 28). Plaintiff said, however, that he only took ibuprofen for pain. (R. 36).

Plaintiff also stated that he felt dizzy when he bent over too quickly, but he did not indicate that he suffered dizziness as a result of his hypertension. (R. 29). Plaintiff had to discontinue one of his hypertension medications because it made him cough, and at the time of the hearing, he had not seen his doctor for a medication adjustment. (R. 30).

Plaintiff raised several other complaints in his testimony before the ALJ. Plaintiff claimed that he only slept four hours per night, even with medication. Id. Plaintiff stated that his pain woke him up at night. (R. 31). Plaintiff also stated that his hands, particularly his left hand, went numb when he slept and that it took five to ten minutes to recover feeling in them. Id. He had difficulty opening a jar or holding a pen. Id. Plaintiff's lack of sleep also impacted his concentration and memory (R. 33). Finally, plaintiff testified that he could "barely" read, although he told the ALJ that he completed a written function report on his own. (R. 24, 43).

The ALJ then reviewed plaintiff's work history with the vocational expert. The vocational expert testified that, with one exception, plaintiff's past relevant work was all classified as unskilled or semi-skilled work at the medium exertional level, although plaintiff reported that he performed several of those jobs at the heavy or very heavy exertional level. (R. R. 38-40). The ALJ noted that the agency had previously determined that plaintiff could perform medium work, but then asked the vocational expert a hypothetical limiting plaintiff to light work with no foot controls; with occasional stooping, crouching, kneeling, climbing, and crawling; and with complete prohibitions on climbing ropes, ladders, and scaffolds. (R. 40). The vocational expert testified that plaintiff would not be able to return to his past relevant work but could perform light work, citing such jobs as an arcade attendant and parking lot attendant, even with

the sitting and standing limitations cited in plaintiff's testimony. (R. 41-42). The vocational expert stated that sitting and standing at will in those light work jobs was not included in the *Dictionary of Occupational Titles* but was based on the vocational expert's own observations of those jobs. (R. 42). In response to questions from plaintiff's attorney, the vocational expert stated that absenteeism once or twice per week would eliminate all work for plaintiff. Id.

At the end of the hearing, plaintiff's counsel asked the ALJ to order consultative examinations to address plaintiff's claims of depression and hand problems. (R. 44). The ALJ took the request under advisement. Id. The ALJ also left the record open to permit plaintiff to submit additional medical records. Id.

**Additional Facts**

After the Appeals Council declined review of plaintiff's case in July 2011, plaintiff filed a new application for supplemental security income benefits[6] in August 2011. (Dkt. # 15, Ex. A). In a letter dated January 3, 2012, the Commissioner awarded benefits to plaintiff effective September 2011. Id. The letter explained that plaintiff would receive back payments from September through December 2011 but then stated that plaintiff's benefits would fall to $0.00 in February 2012. Id.

**ANALYSIS**

**Subsequent Award of Benefits**

As an initial matter, plaintiff argues that his subsequent award of supplemental security income benefits should be considered as evidence of his disability in this case. (Dkt. # 15 at 10). Plaintiff does not state the value of this evidence, explain whether it requires remand, or argue

_____

[6] Plaintiff's insured status expired December 31, 2010, so he would not have been eligible to apply for disability insurance benefits under Title II. (R. 149). The ALJ's decision indicates, however, that plaintiff's insured status did not expire until March 31, 2012. (R. 56). The undersigned notes the discrepancy but finds that it has no bearing on the analysis of the case.

that it supports an immediate award of benefits. Instead, plaintiff simply states that "[c]laimants who have been awarded benefits on the evidence of a second application for benefits have successfully used the award of benefits as evidence in the first claim that was on appeal to a federal court." (Dkt. # 15 at 10). The Commissioner argues that plaintiff has failed to meet the "sentence six" requirements for remand on the basis of new and material evidence that, for good cause, was not previously submitted. (Dkt. # 16 at 10). The Commissioner contends that "the Tenth Circuit has never held that a subsequent grant of benefits, alone, constitutes new and material evidence." Id. The Commissioner further contends that the existence of the award fails to establish "whether the ALJ's findings were supported by substantial evidence or are undermined by new evidence" and does not establish whether plaintiff "had good cause for failing to present the evidence to the first ALJ." Id.

Plaintiff has presented the Court with a single page from the subsequent award of benefits as proof of "new" and "material" evidence requiring remand. (Dkt. # 13, Ex. A). The Tenth Circuit Court of Appeals has not addressed whether a subsequent award of benefits, standing alone, constitutes new and material evidence, and other courts are split on the issue. The Sixth Circuit Court of Appeals has held that "a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." Allen v. Commissioner of Social Security, 561 F.3d 646, 652-53 (6th Cir. 2009). The Third Circuit Court of Appeals has also adopted this position, finding that a subsequent award of benefits did not require "remand or reversal in the absence of new and material evidence, which claimant here has failed to provide." Jackson v. Astrue, 402 Fed.Appx. 717, 718 (3d Cir. 2010) (unpublished).[7] At least two district courts in the Tenth Circuit have

_____

[7] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

followed this position. See Estes v. Astrue, 2012 WL 423372 (D.Utah February 8, 2012) (unpublished); Mosley v. Astrue, 2010 WL 3777232 (D.Colo. September 20, 2010) (unpublished). But see Greene v. Astrue, 2011 WL 2671313, *4, n.3 (D.Kan. July 8, 2011) (unpublished) (remanding the case after the claimant presented evidence of an award of subsequent benefits but not the substance of the evidence that supported the award).

Conversely, several courts have held that the existence of a subsequent award of benefits, issued shortly after the ALJ's decision denying benefits, qualifies as new and material evidence sufficient to require a remand under sentence six. See, e.g., Reichard v. Barnhart, 285 F.Supp.2d 728, 734 (S.D.W. Va. 2003) (holding that remand was required when plaintiff's second application for benefits was approved "less than a week after" the ALJ ruled on plaintiff's first application and found plaintiff not disabled). The Reichard case essentially holds that, "in certain circumstances, an award based on an onset date coming in immediate proximity to an earlier denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome on the claim." Bradley v. Barnhart, 463 F.Supp.2d 577, 580-81 (S.D.W. Va. 2006) (paraphrasing the holding of Reichard).

Plaintiff cites to Luna v. Astrue, 623 F.3d 1032, 1034-35 (9th Cir. 2010), in which the Ninth Circuit Court of Appeals remanded a case for additional findings based on the existence of a subsequent award of benefits because the court could not "easily reconcile" the two findings. In Luna, the Court noted that "[t]here was only one day between the denial of Luna's first application and the disability onset date specified in the award for her successful second application." Id. at 1035. The Court did not have the full record of Luna's second application, only the award. See id. The Court affirmed the district court's order remanding the case for the ALJ to review the second application because Luna "may have presented different medical

evidence to support the two applications, or there might be some other reason to explain the change." Id. The Ninth Circuit essentially viewed the case as one involving an inadequate record, thereby requiring remand for further fact-finding. See id.

The undersigned finds that the reasoning of the Sixth Circuit in Allen, which several other district courts within the Tenth Circuit have adopted, is the proper application of the rule regarding new and material evidence. A subsequent award of benefits, standing alone, is insufficient to establish new and material evidence that warrants remand under sentence six. As the Allen decision notes, the plaintiff bears the burden "to show what evidence supported [a subsequent award of benefits]" because "[t]he new determination might be based on a change in the claimant's condition that occurred after the initial determination or a change in the claimant's circumstances, such as entering a new age classification. Neither of these situations justifies a remand under sentence six of § 405(g)." Allen, 561 F.3d at 654.

Even if the undersigned were to adopt the less stringent standard cited in Luna, however, plaintiff has still failed to meet his burden to demonstrate that the subsequent award of benefits constitutes new and material evidence that, for good cause, was not previously submitted to the ALJ. Although the subsequent award is considered new evidence because it did not exist prior to the final decision of the Commissioner, the evidence of the award is not material to consideration of this appeal. Luna, and other cases that have adopted similar reasoning, rely heavily on the proximity of the subsequent onset date with the earlier denial of benefits. See Luna, 623 F.3d at 1034-35 (quoting Bradley, 463 F.Supp.2d at 580-81). See also Hayes v. Astrue, 488 F.Supp.2d 560 (W.D.Va. 2007) (remanding where one day separated ALJ's denial of benefits and effective date of subsequent award); Bryant v. Astrue, 2012 WL 896147 (E.D.N.C. March 15, 2012) (unpublished) (same); cf. Atkinson v. Astrue, 2011 WL 3664858 (E.D.N.C. August 18, 2011)

(unpublished) (denying request for remand when six months separated ALJ's denial and disability onset date of subsequent award). In this case, plaintiff's subsequent award is based on a disability onset date one year after the ALJ's decision denying benefits. (R. 51-65; Dkt. # 15, Ex. A). Plaintiff simply cannot establish that the subsequent award of benefits is relevant and material to this appeal. For these reasons, the undersigned recommends that the District Court deny plaintiff's request for remand under sentence six of 42 U.S.C. § 405(g).

**Severe Impairments**

Plaintiff argues that the ALJ erred in failing to consider all of his impairments at step two and step three. (Dkt. # 15 at 2-4). Within this broad statement of error, plaintiff alleges four specific errors: (1) that the ALJ erred in finding that plaintiff's depression and hand impairment were medically non-determinable impairments; (2) that the ALJ erred in failing to grant plaintiff's request for consultative examinations to address the issues of plaintiff's depression and hand impairment; (3) that the ALJ should have applied the special technique for mental impairments in light of plaintiff's claims of depression; and (4) that the ALJ erred in failing to address plaintiff's hypertension and insomnia. Id.

Medically Non-determinable Impairments

The ALJ found that plaintiff's claims of depression and "problems with his hands" were medically non-determinable impairments because no objective findings, including treatment records and medications logs, supported plaintiff's claims. (R. 56-57). Plaintiff argues that he "was consistently treated with pain medications and received medication for depression" as evidence that he reported the issues to his doctor. (Dkt. # 15 at 3). Plaintiff also states that his diagnosis of radiculitis "could account for his hand problems." Id. The Commissioner contends that because plaintiff received no diagnosis of either depression or hand impairment from an

acceptable medical source, the ALJ "had no choice" but to find that plaintiff did not suffer from these impairments. (Dkt. # 16 at 3).

A medically determinable impairment "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The ALJ properly found that plaintiff's records contained no evidence that plaintiff was diagnosed with depression. Although the progress notes from December 2009 and February 2010 indicate that plaintiff exhibited some signs of depression, his doctor never diagnosed plaintiff or recommended any treatment.[8] (R. 233-34). Similarly, the medical records demonstrate that plaintiff did not suffer any pain or injury to his hands. The radiculitis that plaintiff states "could account for his hand problems" occurred in late 2009 and early 2010 and seems to be related to his leg and lower back pain. (R. 233-34, 236). Plaintiff's consultative examination in 2009, after plaintiff's alleged disability onset date, revealed no issues related to plaintiff's hands. (R. 209-14). Additionally, plaintiff did not raise these issues until the ALJ hearing. The forms plaintiff completed at the time of his application state that his disabling conditions are "[l]eft leg and back problem; constant pain." (R. 142). Accordingly, the ALJ did not err in finding that plaintiff's depression and hand problems were medically non-determinable impairments.

---

[8] Plaintiff did submit a list of medications that included trazodone, a medication used to treat both depression and insomnia. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000530/ (last visited October 10, 2012); (R. 196-97). Plaintiff stated that the purpose of the medication was for "bedtime," not for depression. (R. 197).

Consultative Examination

Because the ALJ correctly found that plaintiff's depression and hand impairment were medically non-determinable impairments, the ALJ's decision to deny plaintiff's request for a consultative examination to address these alleged impairments was also proper. The ALJ is responsible for ensuring "'that an adequate record is developed during the disability hearing consistent with the issues raised.'" Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (quoting Henrie v. United States Dept. of Health & Human Svcs., 13 F.3d 359, 360-61 (10th Cir. 1993)). Developing the record sometimes requires the ALJ to order a consultative examination, but the ALJ "is given broad latitude" in making the decision to order an examination. Briggs v. Astrue, 221 Fed.Appx. 767, 771 (10th Cir. 2007) (unpublished) (citation omitted). The ALJ is only required to order a consultative examination, however, "after the claimant has satisfied his or her burden to provide objective evidence 'sufficient to suggest a reasonable possibility that a severe impairment exists.'" Briggs, 221 Fed.Appx at 771 (quoting Hawkins, 113 F.3d at 1167).

In this case, plaintiff wholly failed to meet his burden to prove that his claims of depression and hand impairment were reasonable possibilities. Plaintiff did not allege depression or hand problems in his application for disability or in any of the updated forms that asked for updated information on plaintiff's impairments and limitations. (R. 142-48, 162-69, 173-79, 190-95). As previously discussed, the medical records contain no evidence of diagnosis or treatment. In fact, plaintiff's consultative exam was normal with respect to the issues of depression and hand problems. (R. 209-14). For these reasons, the undersigned recommends a finding of no error on this issue.

<u>Special Technique for Mental Impairments</u>

Plaintiff next argues that the ALJ was required to apply the "special technique" used for evaluating mental impairments, because plaintiff established his depression as a medically determinable impairment by arguing that he complained of depression and was treated for depression. (Dkt. # 15 at 3). When an ALJ evaluates a claimant's mental impairments, the regulations require the use of a "special technique," a two-step technique that rates a claimant's functional limitations that result from a mental impairment.[9] <u>See</u> 20 C.F.R §§ 404.1520a, 416.920a. In the first step of the special technique, the ALJ must "evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable impairment." <u>Id.</u> (citing 20 C.F.R. § 404.1508 for the definition of a medically determinable impairment). The regulations then provide, "If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). . . ." <u>Id.</u> In the second step, the ALJ rates a claimant's functional limitations in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. <u>See id.</u>

In this case, the ALJ completed the first step of the special technique by evaluating plaintiff's complaints of depression. The ALJ properly concluded that plaintiff did not have a medically determinable mental impairment and, therefore, was not required to rate plaintiff's functional limitation. <u>See</u> <u>Mushero v. Astrue</u>, 384 Fed.Appx. 693, 694 (10th Cir. 2010) (unpublished). In <u>Mushero</u>, the Tenth Circuit held that the ALJ is required to rate a claimant's

---

[9] The regulations also provide that the special technique is to be conducted at each stage of the administrative review process. <u>See</u> 20 C.F.R. §§ 404.1520a(a), 416.920a(a).. Because plaintiff did not allege that he suffered from depression until the ALJ hearing in April 2010, the record does not contain the standard psychiatric review technique form. <u>See</u> 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

functional limitations "once a claimant has established a medically determinable mental impairment." Id. If a claimant has no medically determinable mental impairment, rating the functional limitations of that non-existent impairment is a futile exercise. Accordingly, the undersigned recommends a finding of no error on this issue.[10]

Failure to Address Plaintiff's Hypertension and Insomnia

Plaintiff also contends that the ALJ erred in failing to "address his hypertension and insomnia at steps 2 and 3." (Dkt. # 15 at 2-3). Plaintiff essentially argues that the ALJ should have found that plaintiff's hypertension and insomnia were severe impairments. Id. The Commissioner argues that any error to consider these conditions at step two is harmless error because the ALJ properly evaluated the impact of plaintiff's hypertension and insomnia in assessing plaintiff's credibility and his residual functional capacity. (Dkt. # 16 at 4-5).

"Once the ALJ finds that the claimant has *any* severe impairment, [she] has satisfied the step two analysis." Parise v. Astrue, 421 Fed.Appx. 786, 788 (10th Cir. 2010) (unpublished) (emphasis in original) (citing Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007)). Failure to address all of a claimant's severe impairments at step two is not reversible error, as long as the ALJ identifies at least one severe impairment, determines that benefits cannot be denied at step two, and "procced[s] to the next step of the evaluation sequence." Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). The error is harmless because, in considering a claimant's residual functional capacity, the ALJ "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. In this case, the ALJ found that plaintiff

---

[10] Alternatively, the undersigned finds that the failure to complete step two of the special technique is harmless error. The Tenth Circuit has previously held that failure to conduct the special technique is harmless error when the mental impairment has a minimal impact on the claimant. See Armijo v. Astrue, 385 Fed.Appx. 789, 791-93 (10th Cir. 2010) (unpublished).

had the following severe impairments: "degenerative disc disease of the thoracic and lumbar spine and degenerative joint disease of the left knee." (R. 56). The ALJ then proceeded to evaluate plaintiff's claim under the remaining steps of the sequential process, concluding at step four that plaintiff retained the residual functional capacity to perform a full range of medium work and could, therefore, perform his past relevant work. (R. 57-60). The ALJ's error, then, was harmless error.

## Residual Functional Capacity and Past Relevant Work

Plaintiff contends that the ALJ failed to elicit proper testimony concerning the demands of plaintiff's past relevant work at step four. (Dkt. # 15 at 4-6). Plaintiff argues that the ALJ obtained only generic information about plaintiff's previous work using only job titles from the Dictionary of Occupational Titles, rather than specific information about the physical and mental demands of plaintiff's work. (Dkt. # 15 at 4). Plaintiff also contends that the ALJ failed to consider the following limitations on his ability to perform the full range of medium work: plaintiff's depression and plaintiff's limitations on sitting, standing, and walking. (Dkt. # 15 at 5-6). The Commissioner argues that the ALJ properly elicited testimony regarding the demands of plaintiff's past relevant work after determining that plaintiff had the residual functional capacity to perform a full range of medium work. (Dkt. # 16 at 6). The Commissioner also argues that the ALJ's residual functional capacity determination is supported by the evidence, even though the agency determination upon which the ALJ relied was completed before plaintiff submitted all of his medical records. (Dkt. # 16 at 7).

At step four of the sequential analysis, the ALJ is required to make three separate findings. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). First, "the ALJ must evaluate a claimant's physical and mental residual functional capacity." Id. The ALJ must then

"determine the physical and mental demands of the claimant's past relevant work." Id. The ALJ then compares his findings regarding the claimant's residual functional capacity to the demands of the past relevant work to determine whether plaintiff can still meet those demands. Id. In this case, the ALJ completed the three phases of the step four analysis in the proper order, but plaintiff contests those findings.

To the extent that plaintiff is arguing that the ALJ's residual functional capacity determination is not supported by the evidence, plaintiff's argument is without merit. The ALJ concluded that plaintiff could perform a full range of medium work. (R. 57). The ALJ properly found that plaintiff's depression and hand problems were medically non-determinable impairments; therefore, the ALJ was not required to consider them or find resulting limitations when assessing plaintiff's residual functional capacity. See 20 C.F.R. § 404.1545(2) (stating that residual functional capacity is determined by "consider[ing] all of your medically determinable impairments of which we are aware . . . ."). Plaintiff also argues that the ALJ erred in relying on the agency doctor's residual functional capacity assessment, dated March 31, 2009, because it is contradicted by subsequent medical records showing that plaintiff had developed degenerative disc and joint disease. (Dkt. # 15 at 6). Plaintiff contends that the ALJ ignored these records. Id. In her decision, however, the ALJ noted that the x-rays showing mild degenerative disc and joint disease post-dated the agency doctor's opinion. (R. 59-60). The ALJ concluded that these x-rays did not contradict the agency's finding that plaintiff could perform medium work. (R. 60). The ALJ also relied on the conservative treatment that plaintiff received. (R. 59-60). Plaintiff has not cited to any evidence in the record that would contradict the ALJ's conclusion and has not cited any case law that undermines the ALJ's determination.

With respect to the ALJ's determination of the demands of plaintiff's past relevant work, the undersigned finds that the ALJ adequately developed the record. The ALJ is only required to obtain "factual information about those work demands which have a bearing on the medically established limitations." SSR 82-62. See also Burk v. Astrue, 2012 WL 3156313, *3 (10th Cir. August 6, 2012) (unpublished) (holding that an ALJ was not required to "explore the mental demands of [a claimant's] past relevant work because" the residual functional capacity assessment did not include any mental limitations). In this case, the ALJ found that plaintiff maintained the ability to perform a full range of medium work. In exploring plaintiff's work history, the ALJ asked plaintiff about each job he had previously performed, including his specific tasks and the amount of weight he lifted. (R. 13-20). The ALJ then reviewed each of those jobs with the vocational expert, who testified to the exertional level of each job as it is generally performed and as plaintiff actually performed it. (R. 38-40). In her decision, the ALJ relied on the vocational expert's testimony and discussed whether plaintiff could perform that job generally or as actually performed, noting that she had compared the demands of plaintiff's past relevant work with his residual functional capacity in reaching her conclusions. (R. 61). These findings are sufficient to satisfy the requirements of Winfrey.

**Credibility**

Finally, plaintiff argued that the ALJ erred in her credibility findings because she used boilerplate language and circular reasoning. (Dkt. # 15 at 6-7). Plaintiff also contends that the ALJ did not link plaintiff's statements to the credibility factors set forth in Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987), including plaintiff's description of his symptoms and his history of treatment. (Dkt. # 15 at 7-8). The Commissioner argues that the ALJ "supplied numerous reasons" for finding plaintiff not credible. (Dkt. # 16 at 9). Additionally, the

Commissioner contends that plaintiff's arguments are no more than an attempt to re-weigh the evidence, using plaintiff's own testimony as the basis for challenging the ALJ's findings. (Dkt. # 16 at 9-10).

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

In this case, the ALJ made very specific findings to support her finding that plaintiff was not credible. The ALJ cited multiple instances in the record where plaintiff exaggerated his symptoms, including his statements to the agency's examining physician that recent x-rays showed that the discs in his back were "completely gone." (R. 60). The ALJ also found that the "relatively weak medical evidence" also damaged plaintiff's credibility. Id. Finally, the ALJ noted plaintiff's testimony that he left his last job, not because of his injuries, but because he had marital problems at home and performance issues at work. Id. While the ALJ acknowledged that plaintiff's recent diagnoses of degenerative disc disease and degenerative joint disease would

cause some difficulties, plaintiff's subjective complaints simply were not well-supported and undermined plaintiff's credibility. (R. 60-61). These reasons are sufficiently detailed to support the ALJ's credibility findings, and the undersigned recommends a finding of no error on this issue.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **AFFIRM** the ALJ's decision denying plaintiff's claims for benefits.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by October 29, 2012.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 15th day of October, 2012.

T. Lane Wilson
United States Magistrate Judge