UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRIS DELANO BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0566-CVE-TLW |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is the magistrate judge's report and recommendation (Dkt. # 18) recommending that the Court affirm the Commissioner of the Social Security Administration's decision to deny plaintiff Chris Delano Baker's claim for disability benefits. Plaintiff objects to the report and recommendation and argues that the case should be remanded for further administrative proceedings. Dkt. # 19. Defendant has not filed a response to plaintiff's objection.

### I.

On October 8, 2008, plaintiff filed an application for supplemental security income and an application for disability insurance benefits, both alleging an onset date of September 29, 2008. Dkt. # 11-5, at 2-10. Plaintiff was 53 years old at the time of his applications, and he claimed that he was disabled because of pain in his back and left leg. Dkt. # 11-6, at 2. Plaintiff's claims were initially denied on April 8, 2009, and his request for reconsideration was denied on July 13, 2009. Dkt. # 11-3, at 2-6. The Commissioner found that the medical evidence showed that plaintiff had knee and back pain but that plaintiff was not prevented from doing some types of work. Dkt. # 11-4, at 3.

Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was set for April 28, 2010. Dkt. # 11-4, at 21-22, 28.

Plaintiff appeared at the hearing and was represented by counsel. Dkt. # 11-2, at 11. Plaintiff testified at the hearing, and the ALJ briefly questioned plaintiff regarding his work history. Id. at 14-21. The ALJ elicited answers from plaintiff regarding the basic job description of each position that he held over the last 15 years as well as the amount of weight that he was required to lift to do each job. Id. Plaintiff stated that, generally, he would have to lift about 30 to 60 pounds on a regular basis, depending on the job that he held. Id. at 15-16, 18, 20, 24-25. The ALJ ascertained that plaintiff last worked in September 2008, and that he stopped working because he was "having family problems - - marital problems." Id. at 21. Plaintiff's attorney then asked plaintiff about his work history. Id. at 22-38. Plaintiff stated that he was fired from his most recent job because his boss felt that he was no longer performing the work at the same level that he had previously, which, plaintiff claimed, was because his back pain was "hurting [ ] more" and he was missing "[a]t least one or two days [of work] every week." Id. at 22-23. Plaintiff stated that he was told that he had a "disk [ ] pushing over," and that the doctor had not recommended any surgery but was instead trying to get plaintiff a pain management referral. Id. at 26. When plaintiff's attorney questioned him regarding his leg pain, plaintiff testified that "sometimes [his] left leg will just kind of go out" on him, especially if he walks up steps, and that he has knee pain if the weather is bad. Id. at 26-27. Plaintiff complained that his feet swell, and that he can stand for approximately "15 minutes or less," sit for "20 minutes at most," and walk "maybe less than a block." Id. at 27-29. Plaintiff stated that he uses a cane two to three times per week, and has trouble walking on uneven surfaces. Id. at 30. Plaintiff further testified that he takes Ibuprofen, in an over-the-counter strength,

for pain. Id. at 37. Plaintiff claimed that he gets dizzy, and that one of his medications for high blood pressure gave him a dry cough. Id. at 30-31. Plaintiff also testified that he took a "sleeping pill," but that he still slept only four hours per night because the pain would wake him up, and because he sleeps so little, he has trouble concentrating and has memory problems. Id. at 31-32, 34-35. Plaintiff claimed that his hands get numb while he sleeps, that he has trouble holding pens or opening jars, and that the heaviest thing he can lift is his "light" vacuum cleaner, which weighs 15 to 20 pounds. Id. at 32-34. Plaintiff claimed that his health problems "keep [him] down," and that his doctor put in a referral for him to see a doctor regarding him feeling "down," which was denied. Id. at 35. Plaintiff stated that he is no longer active and does not socialize much. Id. at 36-37. Plaintiff testified that he visits his brother or father for 15 to 20 minutes at a time before returning home. Id. at 37. Plaintiff stated that he would not be able to return to his job as a forklift operator because of the "bumping" that occurs when driving a forklift. Id.

The ALJ called a vocational expert (VE) to testify as to plaintiff's ability to perform his past relevant work, and plaintiff's attorney had no objections to the VE's qualifications. Id. at 39. The VE characterized plaintiff's prior employment as a sandblaster and production worker as "medium," but performed at the "heavy" and "very heavy" levels. Id. at 39-40. The VE characterized the remainder of plaintiff's prior employment as "medium exertion." Id. at 40-41. The ALJ asked the VE the following hypothetical:

> Assuming an individual who was 53 years of age as of his alleged onset date with a high school education and the past relevant work history you just described and a DDS classified him as having the ability to perform medium work. So if instead he were limited to light work as that's defined in the regulations in that he could lift or carry up to ten pounds frequently, 20 pounds occasionally, could stand or walk six hours a day, could sit six hours a day, and can push or pull with the limits of ten and 20 pounds - - and if he could operate no foot controls . . . with the left lower extremity. And if he could only occasionally stoop and crouch and kneel and climb

> and crawl - - could never climb ladders, ropes, or scaffolds. Would this individual
> be able to perform any of the claimant's past relevant work?

Id. at 41-42. The VE answered that the individual could not perform plaintiff's past relevant work, but that there would be other jobs that such an individual could perform. Id. at 42. The VE stated that, at the unskilled light level, the individual could perform the job of an arcade attendant or a parking lot attendant, but that plaintiff would not have acquired any skills in the performance of his past work that would transfer to employment at the light level. Id.

Plaintiff's counsel asked the VE to reconsider the hypothetical with the additional limitations of "an individual who can sit for 20 minutes at a time then needs to get up five minutes or so and can stand 15 minutes or less and then would need to sit down for ten to 20 minutes at a time." Id. The VE stated those additional limitations would not alter the availability of any of the previously listed jobs. Id. at 43. Plaintiff's counsel asked whether the listed jobs would be available if the individual missed one or two days of work each week, and the VE testified that would "eliminate those jobs and all other jobs." Id. The VE stated that his testimony differed slightly from information in the Dictionary of Occupational Titles and Selected Characteristics of Occupations because of "sit/stand options," but that he had evaluated those jobs and found that an individual could "sit/stand at will." Id. Plaintiff's counsel requested consultative examinations of plaintiff in light of the testimony regarding plaintiff's depression and hand problems. Id. at 45.

The ALJ issued a written decision on July 28, 2010, denying plaintiff's claim for disability benefits. The ALJ noted that plaintiff was insured through March 31, 2012 and had not engaged in substantial gainful activity since September 29, 2008. Dkt. # 11-3, at 12. The ALJ reviewed the medical evidence and found that plaintiff had two severe impairments, specifically degenerative disc disease of the thoracic and lumbar spine and degenerative joint disease of the left knee. Id. The ALJ

noted plaintiff's testimony that he had problems with his hands and depression, but found both were medically non-determinable. Id. at 12-13. The ALJ also acknowledged plaintiff's request for consultative examinations, but found that plaintiff raised his hand problems and depression for the first time at the hearing, which was "not sufficient to warrant obtaining consultative examinations." Id. at 13. The ALJ did not note the two positive depression screens in plaintiff's medical record (Dkt. # 11-7, at 36-37), and the ALJ did not make any findings regarding plaintiff's high blood pressure or insomnia.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform the full range of medium work. The ALJ reviewed plaintiff's testimony and a function report completed by plaintiff on June 27, 2009, and concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Dkt. # 11-3, at 14.

The ALJ reviewed plaintiff's medical records and noted that plaintiff received treatment through the Indian Health Care Resource Center from November 3, 2008 through March 24, 2010. Id. X-rays of plaintiff's lumbar spine were taken on November 18, 2008, and of his bilateral hips on February 23, 2010, and both found no acute pathology or disease. Id. Records from Claremore Indian Hospital reflect that x-rays taken of plaintiff's lumbar and thoracic spines on February 16, 2010 showed mild degenerative disc disease of the lumbar spine and a mild disc bulge and facet arthropathy of the thoracic spine. Id. at 14-15. Joel Hopper, D.O. performed a consultative examination on February 26, 2009. Id. at 15. Dr. Hopper reviewed the x-ray obtained in November 2008 and found "vertebral body heights and intervertebral disc spaces are well-maintained." Id.

5

Plaintiff's examination results were within normal limits, except for a mild reduction in range of motion in his left knee. Id. Plaintiff could pick up and manipulate paper clips, manipulate small objects, and effectively grasp tools, and plaintiff's gait was "stable" without the use of an assistive device. Id. Dr. Hopper's assessments included hypertension, history of insomnia, left knee pain, and chronic lower back pain. Id.

The ALJ noted that a radiology report of plaintiff's left knee showed "good alignment of the knee joint without any narrowing of the joint space, no degenerative changes to the distal femur or proximal tibia, and normal patella." Id. After reviewing plaintiff's medical records, the ALJ noted that plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual and the treatment the claimant has received has been essentially routine and/or conservative in nature," and that, because plaintiff was alleging totally disabling symptoms, "one might expect to see some indication in the treatment records of restrictions placed on [plaintiff] by the treating doctor." Id.

The ALJ found that the State Disability Determination Services (DDS) RFC conclusion supported a finding of "not disabled." The ALJ noted that she gave the DDS opinion "great weight" because it is supported by the objective medical evidence in the record. Id. Although the most recent x-rays showed mild degenerative disc disease of the lumbar spine and a mild disc bulge and facet arthropathy of the thoracic spine, the ALJ found that those mild objective findings also supported the DDS opinion that plaintiff is able to perform medium work. Id. at 15-16.

The ALJ noted that plaintiff was not prescribed any narcotic based pain relieving medications (Id. at 16), and that plaintiff "consciously attempted to portray a more severe impairment than is supported by the medical evidence." Id. For example, the ALJ stated that

plaintiff reported that he used "a cane or walker at all times," but that there was no prescription for such an assistive device. Id. The ALJ also noted that plaintiff did not use a cane or walker at the consultative examination with Dr. Hopper in February 2009. Dkt. # 11-3, at 16. However, at the hearing, plaintiff testified that he uses a cane "every once in a while" or "two or three times a week." Dkt. # 11-2, at 30. And, the ALJ failed to state that in the Social Security Administration field office's disability report, it was noted that plaintiff "arrived walking slow and using a cane." Dkt. # 11-6, at 10.

The ALJ found that two factors weighed against considering plaintiff's limited daily activities as strong evidence in favor of finding plaintiff disabled. Id. at 16. First, limited daily activities "cannot be objectively verified with any reasonable degree of certainty," and, second, plaintiff's limitations could be attributable to other factors than plaintiff's medical condition. Id. The ALJ found that there was evidence that plaintiff stopped working for reasons unrelated to his impairments, including family problems or an inability to perform his job well. Id. However, the ALJ failed to note that plaintiff testified at the hearing that he was unable to perform his job as well, and was thereafter fired, because of the pain he was experiencing. Dkt. # 11-2, at 22. The ALJ stated that she did not discount all of plaintiff's complaints, but noted that plaintiff's treating physician did not place any functional restrictions on his activities that would preclude work activity at the medium level. Dkt. # 11-3, at 16.

Because the ALJ found that plaintiff could perform medium work, the ALJ concluded that plaintiff was capable of performing past relevant work as actually and generally performed. Id. at 16-17. The Appeals Council denied plaintiff's request for review, and the ALJ's written decision serves as the Commissioner's final decision on plaintiff's request for benefits. Dkt. # 11-2, at 2.

Plaintiff thereafter filed a new application for supplemental security income (SSI) benefits in August 2011. Dkt. # 15-1; Dkt. # 19-1, at 3. The Commissioner found that plaintiff was "disabled in July 2010," and that plaintiff would be "eligible for SSI beginning August 11, 2011." Dkt. # 19-1, at 3.

Plaintiff filed this case on September 8, 2011, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge entered a report and recommendation (Dkt. # 18) recommending that the Court affirm the Commissioner's decision to deny plaintiff's applications for benefits.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

Plaintiff raises four objections to the magistrate judge's report and recommendation. Dkt. # 19. First, plaintiff argues that the ALJ did not properly consider all of plaintiff's impairments at step two and step three of the sequential evaluation process. Second, plaintiff argues that the ALJ's determination that plaintiff could return to past relevant work was not based on substantial evidence. Third, plaintiff claims that the ALJ failed to adequately explain why she found that plaintiff's

testimony lacked credibility. Finally, plaintiff argues that a subsequent award of benefits is new and material evidence that requires remand. Defendant has not responded to plaintiff's objections.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir.2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step four of the analysis and found that plaintiff did not have an impairment that prevented him from performing his past relevant work. The step four analysis has three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead,

9

reviews the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

## A.

Plaintiff argues that the ALJ's determinations at steps two and three failed because she did not consider all of plaintiff's impairments. Dkt. # 19, at 1. Plaintiff alleges four specific errors within his first overarching statement of error. First, plaintiff argues that the ALJ erred in finding that plaintiff's depression and hand impairments were medically non-determinable. Second, plaintiff argues that the ALJ erred in failing to grant plaintiff's request for consultative examinations to address plaintiff's depression and hand impairments. Third, plaintiff alleges that the ALJ should have applied the special technique for mental impairments in light of plaintiff's claim that he suffered from depression. Finally, plaintiff contends that the ALJ erred in failing to address plaintiff's hypertension and insomnia. Because plaintiff's first and fourth arguments, regarding his depression, insomnia, and hypertension, are similar, the Court will consider them together.

The magistrate judge considered all four arguments. Dkt. # 18, at 15-20. As to plaintiff's first argument, that the ALJ erred in finding his depression was medically non-determinable, the magistrate judge noted that, "[a]lthough the progress notes from December 2009 and February 2010

indicate that plaintiff exhibited some signs of depression, his doctor never diagnosed plaintiff or recommended any treatment." Id. at 16. The magistrate judge further noted that plaintiff's medications included trazodone, which is used to treat both depression and insomnia, but that plaintiff stated the purpose of the medication was for "bedtime." Id. at 16, n. 8. Therefore, the magistrate judge concluded that the ALJ did not err in finding plaintiff's depression was medically non-determinable. Id. at 16. Regarding plaintiff's insomnia and hypertension, the magistrate judge found that any error in failing to address either impairment was harmless error because the ALJ concluded that plaintiff had a severe impairment at step two and proceeded to evaluate plaintiff's claims under the remaining steps of the sequential process. Id. at 19-20.

Plaintiff's list of prescription medications includes zolpidem, also known as Ambien, which treats insomnia,[1] and trazodone, which treats depression.[2] Plaintiff stated he takes both medications at bedtime. Dkt. # 11-6, at 57. Plaintiff had a positive depression screening in December 2009 and again in February 2010. Dkt. # 11-7, at 36-37. Additionally, plaintiff testified that health problems "keep [him] down," and that his doctor put in a referral for him to see a doctor regarding him feeling "down." Dkt. # 11-2, at 35.

In contrast to plaintiff's claim of depression, plaintiff's hypertension is documented in nearly every medical record included in the administrative transcript. Plaintiff was prescribed amlodipine[3]

---

[1]   U.S. Nat'l Library of Med., PubMed Health Entry on Zolpidem, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012721/?report=details (last updated Aug. 1, 2009).

[2]   U.S. Nat'l Library of Med., PubMed Health Entry on Trazodone, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012504/?report=details#uses (last updated Aug. 1, 2009).

[3]   U.S. Nat'l Library of Med., PubMed Health Entry on Amlodipine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000914 (last updated May 15, 2012).

and lisinopril.[4] Dkt. # 11-6, at 57. Both are used to treat hypertension. Plaintiff testified that he took medications for high blood pressure, but that one of his "new" high blood pressure prescriptions caused a cough that would go on "all day and all night." Dkt. # 11-2, at 31. Plaintiff's medical records reflect that, in November 2008, he complained of high blood pressure on two separate occasions, and that he was diagnosed with hypertension. Dkt. # 11-7, at 7-8. Plaintiff's diagnosis again included elevated blood pressure in March 2010. Id. at 50. Dr. Hopper included plaintiff's hypertension in his medical history, and Dr. Hopper's assessments included hypertension. Id. at 13.

Plaintiff's insomnia is similarly well documented. Plaintiff was also diagnosed with insomnia in November 2008. Dkt. # 11-7, at 10. Plaintiff was continuously prescribed zolpidem, which is used to treat insomnia. Dkt. # 11-7, at 7, 34, 36, 50, 52, 54, 56. Dr. Hopper's assessments included insomnia. Id. at 12. And, on May 4, 2009, plaintiff went to the doctor, complaining that the doctor should increase his sleep medications, and insomnia was again listed as plaintiff's diagnosis. Id. at 34.

The ALJ "bears the responsibility for ensuring that 'an adequate record is developed during the disability hearing consistent with the issues raised' in that hearing." Grogan v. Barnhart, 399 F.3d 1257, 1264 (10th Cir. 2005) (quoting Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993)). In other words, although the burden of proof generally rests upon the claimant, the ALJ should address impairments that come to the ALJ's attention during the

---

[4]   U.S. Nat'l Library of Med., PubMed Health Entry on Lisinopril, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0010968 (last updated Aug. 1, 2012).

hearing. Id. at 1263-64; Spicer v. Barnhart, 64 Fed. Appx. 173, 175 (10th Cir. 2003) (unpublished)[5] ("Administration regulations clearly state that where an individual has more than one impairment, 'we will consider all of [the] impairment(s) of which we are aware." (citing 20 C.F.R. § 404.1545(a))). "At step two, the ALJ is to determine whether the claimant has an 'impairment or combination of impairments which significantly limits [his] . . . ability to do basic work activities.'" Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (quoting 20 C.F.R. § 404.1520(c)) (alterations in Hinkle). The Tenth Circuit has "said that this step requires a 'de minimis' showing of impairment." Id. (quotation omitted). "[T]he ALJ must 'consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" Langley v. Barnhart, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1523) (alterations in Langley). And, "[i]f the claimant's combined impairments are medically severe, the Commissioner must consider 'the combined impact of the impairments . . . throughout the disability determination process.'" Id. (quoting 20 C.F.R. § 404.1523) (alterations in Langley).

A claimant's showing of a mere presence of a condition is not sufficient. Hinkle, 132 F.3d at 1352. But, where the medical record contained some evidence of impairment, the ALJ erred in concluding that the condition was "medically non-determinable." Saterlee v. Astrue, 450 Fed. Appx. 753, 755 (10th Cir. 2011) (unpublished). Additionally, the Tenth Circuit has said that post hoc arguments regarding the final degree of actual limitation imposed by the medically non-determinable condition cannot "save" the ALJ's decision because the ALJ would have found, "as

---

[5] This and all other unpublished decisions are not precedential, but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

a threshold matter, that no medically determinable [ ] impairment existed, [so] the ALJ [would have] had no occasion to determine any associated functional limitations, as only medically determinable impairments are considered in the analysis of RFC." Id. at 756 (citations omitted).

While an overall review of the medical record reveals that plaintiff's chief complaints were of pain in his back and leg, there are several documents pointing to demonstrable impairments involving plaintiff's insomnia, hypertension, and depression. As to plaintiff's claims of depression, plaintiff was able to show more than a mere presence of depression. The record contains evidence that plaintiff was prescribed a medication used primarily to treat depression at the same time that he was prescribed a medication to treat insomnia. Dkt. # 11-6, at 57. Although plaintiff stated that he took both medications at "bedtime," the primary use of trazodone is to treat depression. Plaintiff was prescribed another medication, zolpidem, to treat his insomnia, concurrently with trazodone. The ALJ failed to consider the medical evidence in plaintiff's file, including the likelihood that plaintiff would be prescribed two separate medications for insomnia and the positive depression screenings. Further, plaintiff's own claim that he felt "down" was reinforced by the positive depression screenings. Dkt. # 11-7, at 36-37. Because the ALJ erroneously stated that "no treatment records or medication logs were found supporting [plaintiff's depression] claim" (Dkt. # 11-3, at 13), the ALJ determined, as a threshold matter, that plaintiff's depression was medically non-determinable, and thus had no occasion to determine "any associated functional limitations." Saterlee, 450 Fed. Appx. at 755. The ALJ did not consider the "combined impact" of all of plaintiff's impairments "throughout the disability determination process" because she summarily rejected plaintiff's depression as medically non-determinable. Langley, 373 F.3d at 1123-24. The

Court finds that the ALJ failed to properly consider the medical evidence of plaintiff's depression, and therefore failed to apply the appropriate analysis to plaintiff's claims.

Similarly, because the ALJ, in the first instance, failed to address plaintiff's hypertension and insomnia, much less make a finding as to whether either was a severe impairment, the ALJ failed to consider all of plaintiff's impairments throughout the sequential evaluation process. Although plaintiff raised both his hypertension and insomnia at the hearing, the ALJ did not consider either impairment at any point in the sequential disability determination process, and, therefore, did not consider all limitations in determining plaintiff's RFC. While the Tenth Circuit recognizes harmless error in social security disability cases, harmless error is inapplicable where "a harmless error determination rests on legal or evidentiary matters not considered by the ALJ." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, the ALJ did not discuss plaintiff's hypertension or insomnia; thus, the ALJ could not have considered the effect either impairment would have on plaintiff's RFC. Plaintiff's hypertension or insomnia could impact the ALJ's RFC determination on remand because plaintiff's hypertension or insomnia, in combination with his other impairments, could significantly limit plaintiff's RFC to perform his past relevant work. Crider v. Barnhart, 427 F. Supp. 2d 999, 1010 (remanding where ALJ failed to discuss fibromyalgia diagnosis at step two) (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)) (remaining citations omitted). Therefore, the ALJ had an obligation to consider evidence regarding plaintiff's insomnia and hypertension.

The Court declines to reach plaintiff's other objections to the report and recommendation because the ALJ's failure to consider all of plaintiff's impairments raised at the hearing and the

ALJ's improper consideration of the medical evidence supporting plaintiff's depression are sufficient reasons to remand the case for further proceedings.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 18) is **rejected**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 21st day of November, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE